# Exhibit A

**COSTELLO & MAINS, LLC**
By: Kevin M. Costello
Attorney I.D. No. 024411991
18000 Horizon Way, Suite 800
Mount Laurel, NJ 08054
(856) 727-9700
Attorneys for Plaintiff

| | |
|---|---|
| CHELSEA MURPHY, | SUPERIOR COURT OF NEW JERSEY |
| | GLOUCESTER COUNTY - LAW DIV. |
| Plaintiff, | |
| | CIVIL ACTION |
| vs. | |
| | |
| AMAZON FULFILLMENT SERVICES INC. d/b/a AMAZON FULFILLMENT CENTER TEB3; and JOHN DOES 1-5 AND 6-10, | DOCKET NO: |
| | |
| Defendants. | COMPLAINT AND JURY DEMAND |

Plaintiff, Chelsea Murphy, residing in Chester County, Pennsylvania, by way of Complaint against the defendants, says:

### Preliminary Statement

Plaintiff brings suit under the New Jersey Law Against Discrimination ("LAD") alleging sexual harassment.

### Identification of Parties

1. Plaintiff Chelsea Murphy ("Plaintiff") is, at all relevant times herein, a female resident of the State of New Jersey and an employee of the Defendant.

2. Defendant Amazon Fulfillment Services Inc. d/b/a Amazon Fulfillment Center TEB3 ("Defendant") is, a corporation with its registered agent at 100 Princeton South Corporate Center, Ewing, New Jersey 08628 and conducting business at 2651 Oldmans Creek Road, Logan Township, Gloucester County, New Jersey, 08085.

1

3. Defendants John Does 1-5 and 6-10, currently unidentified, are individuals and/or entities who, on the basis of their direct acts or on the basis of *respondeat superior*, are answerable to the plaintiff for the acts set forth herein.

### General Allegations

4. Plaintiff was hired by Defendant on or about August 10, 2019 as a Packer.

5. In or around February 2020, Plaintiff was sexually harassed by a male employee of Defendant, Anthony Carei, as follows:

   a. Carei regularly called Plaintiff names such as "boo" and "beautiful" despite having no romantic relationship with Plaintiff and despite knowing Plaintiff's husband, then a fellow employee of Defendant;

   b. Carei sent Plaintiff several messages telling Plaintiff that he could replace Plaintiff's husband and that Carei loved Plaintiff;

   c. Carei began waiting for Plaintiff after work in an attempt to walk her to her car, forcing Plaintiff to ask a friend to walk her to her car as a protective measure;

   d. Carei began to ask Plaintiff to meet him after work and have sex with him in his car.

6. Plaintiff reported this harassment to her Process Assistant, Amanda Turner, who told Plaintiff that Carei was doing the same thing to her and that Plaintiff needed proof to report the harassment to Human Resources.

7. Upon information and belief, Carei was sexually harassing at least five other female employees besides Plaintiff.

8. In or around August 2020, Carei approached Plaintiff and stated, "I'm coming for your ass" and "I'm going to get that ass."

2

9. Plaintiff's husband confronted Carei about his harassment of Plaintiff.

10. On or about August 11, 2020, Plaintiff reported Carei's harassment to Defendant's Human Resources Department.

11. On that same date, or shortly thereafter, Carei reported Plaintiff's husband to Defendant's Human Resources Department for confronting Carei about his harassment of Plaintiff.

12. Defendant immediately suspended Plaintiff's husband upon Carei's report for two days, initially, and terminated Plaintiff's husband rather than returning him to work.

13. Defendant failed to take any immediate or even prompt action regarding Plaintiff's report of Carei's sexual harassment.

14. Carei's sexual harassment of Plaintiff continued unabated following Plaintiff's report of same to Defendant's Human Resources Department.

15. Plaintiff reported this further harassment to Site Lead Nick Twineman.

16. Plaintiff further asked Twineman why her husband had been fired and requested a copy of Defendant's harassment policy.

17. Twineman merely responded to Plaintiff that "the issue had been handled" and that Carei would not be working near her anymore.

18. Contrary to Twineman's statement, Carei continued to work near Plaintiff as well as continued to sexually harass her.

19. On or about September 1, 2020, Carei told Plaintiff, "Now I can stare at that ass uninterrupted."

3

20. Plaintiff again reported Carei's continuing harassment to Defendant's Human Resources Department and stated her intention to get a restraining order against Carei because Defendant had failed do anything despite her numerous reports of the harassment.

21. Only then did Plaintiff receive any response from Human Resources regarding this continuing harassment, when she was called into a meeting with the Head of Human Resources (name unknown), who told Plaintiff they would begin to investigate her harassment complaint on the following Monday, and asked Plaintiff what Defendant could do for her in the meantime.

22. Plaintiff responded that she was not comfortable working near Carei.

23. Defendant's Head of Human Resources offered to move Plaintiff's work area.

24. Plaintiff requested that Defendant move Carei instead, and the Head of Human Resources agreed, telling Plaintiff that she could take her break, and that Carei would be gone when she returned to her work area.

25. Despite this statement, Carei was still in the same work area when Plaintiff returned from her break, and within fifteen minutes of Plaintiff returning from break, Carei moved even closer to Plaintiff.

26. Plaintiff contacted Human Resources yet again, received no response, and Carei remained in the same work area and continued his unabated sexual harassment of Plaintiff.

27. In late September 2020, Carei was terminated.

28. On the day of Carei's termination, Plaintiff discovered that her tire suddenly had a crack in it and was flat when she went to her car in Defendant's parking lot.

29. Plaintiff reported her flat tire to Human Resources, and asked why it had taken them over six weeks to address her sexual harassment complaints when they had immediately

4

suspended and then terminated her husband when Carei had reported him for confronting Carei about harassing Plaintiff.

30. Defendant's Head of Human Resources told Plaintiff that the person who originally had been handling Plaintiff's harassment complaints had quit.

31. Plaintiff again asked why it had taken so long for them to address her complaints, as compared with Carei's complaint about her husband, and the Head of Human Resources responded, "Well, we did our job, and that's that."

32. The aforementioned harassment was sexual on its face and was because of plaintiff's gender.

33. The harassment was severe and/or pervasive.

34. The harassment was such that a reasonable woman in the same or similar circumstances would have found the work environment to have become hostile and/or intimidating and/or abusive.

35. The work environment did so alter for plaintiff.

36. Defendant is responsible for the harassment because it failed to reasonably promulgate and/or enforce a policy prohibiting the same.

37. Defendant is also liable for the harassment because it knew or should have known about the harassment and failed to take prompt and effective remedial measures to stop it.

38. Defendant treated Plaintiff less favorably than those outside of her protected class (female) when it acted immediately to address Carei's (male) report to Human Resources, but failed to address Plaintiff's sexual harassment complaints regarding Carei for over six weeks.

39. In addition or in the alternative, Defendant retaliated against Plaintiff for engaging in LAD-protected activity (her sexual harassment complaints) when it failed to promptly address her complaints.

40. As a result of Defendant's actions and/or omissions described above, Plaintiff has been forced to suffer economic and non-economic harm, including emotional distress.

41. To the extent there is any "mixed motive," Plaintiff need only show that a determinative or motivating factor in Defendant's actions and/or omissions described above were because of her membership in one or more of the protected groups set forth above.

42. Because Defendant's actions and/or omissions described above were undertaken by members of upper management and/or members of upper management were willfully indifferent to the same, and because actions were especially egregious, punitive damages are warranted.

## COUNT I

### Sexual Harassment Under the LAD

43. Plaintiff hereby repeats and realleges paragraphs 1 through 42, as though fully set forth herein.

44. The conduct set forth above constitutes sexual harassment for which Defendant is liable to Plaintiff.

WHEREFORE, Plaintiff demands judgment against the defendants jointly, severally and in the alternative, together with compensatory damages, including emotional distress and personal hardship, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

## COUNT II

### Sex Discrimination Under the LAD

45. Plaintiff hereby repeats and realleges paragraphs 1 through 44, as though fully set forth herein.

46. The disparate treatment set forth above constitutes sex discrimination for which Defendant is liable to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against the defendants jointly, severally and in the alternative, together with compensatory damages including emotional distress and personal hardship, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, and any other relief the Court deems equitable and just.

## COUNT III

### Retaliation Under the LAD

47. Plaintiff hereby repeats and realleges paragraphs 1 through 46, as though fully set forth herein.

48. Plaintiff engaged in protected activity under the LAD in that she complained about sexual harassment.

49. Subsequent to engaging in this protected activity, Plaintiff was subjected to adverse employment actions including, but not limited to, disparate treatment in Defendant's handling of Plaintiff's harassment complaints.

WHEREFORE, Plaintiff demands judgment against the defendants jointly, severally and in the alternative, together with compensatory damages, including emotional distress and personal hardship, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys'

7

fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

## COUNT IV

### Request for Equitable Relief

50. Plaintiff hereby repeats and realleges paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiff requests the following equitable remedies and relief in this matter.

52. Plaintiff requests a declaration by this Court that the practices contested herein violate New Jersey law as set forth herein.

53. Plaintiff requests that this Court order the defendants to cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific plaintiff and as to all other individuals similarly situated.

54. To the extent that plaintiff was separated from employment and to the extent that the separation is contested herein, plaintiff requests equitable reinstatement, with equitable back pay and front pay.

55. Plaintiff requests, that in the event that equitable reinstatement and/or equitable back pay and equitable front pay is ordered to the plaintiff, that all lost wages, benefits, fringe benefits and other remuneration is also equitably restored to the plaintiff.

56. Plaintiff requests that the Court equitably order the defendants to pay costs and attorneys' fees along with statutory and required enhancements to said attorneys' fees.

57.     Plaintiff requests that the Court order the defendants to alter their files so as to expunge any reference to which the Court finds violates the statutes implicated herein.

58.     Plaintiff requests that the Court do such other equity as is reasonable, appropriate and just.

WHEREFORE, Plaintiff demands judgment against the defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

COSTELLO & MAINS, LLC

Dated: February 10, 2021

By: /s/ Kevin M. Costello
Kevin M. Costello